543 A.2d 630

Earl J. Raynes and Ruth B. Raynes, his wife, *v.* Lucille M. O'Brien and Tax Claim Bureau of Dauphin County. Earl J. Raynes and Ruth B. Raynes, his wife and the Tax Claim Bureau of Dauphin County, Appellants.

Argued April 21, 1988, before Judges MACPHAIL and SMITH, and Senior Judge BARBIERI, sitting as a panel of three.

*Robert G. Radebach,* for appellants.

*John W. Frommer, Smigel, Anderson & Sacks,* for appellee, Lucille M. O'Brien.

*F. R. Martsolf,* Solicitor, for appellee, Tax Claim Bureau of Dauphin County.

OPINION BY SENIOR JUDGE BARBIERI, July 1, 1988:

Earl J. and Ruth B. Raynes and the Tax Claim Bureau of Dauphin County (Bureau) appeal an order of the Dauphin County Court of Common Pleas denying posttrial motions which they filed in response to the trial court's order setting aside a tax sale of property owned by Lucille M. O'Brien.

Pursuant to a settlement agreement following her divorce in April of 1981, Mrs. O'Brien received sole ownership of the marital residence at 431 Rosewood Lane in Swatara Township. Subsequently, the 1981 and 1982 real estate taxes on this property became delinquent.

In July of 1983, the Bureau notified Mrs. O'Brien that the property was scheduled for tax sale in light of the 1981 tax delinquency. Mrs. O'Brien also received a tax claim notice for the 1982 taxes. In August of 1983, Mrs. O'Brien entered into an installment payment agreement for the 1981 taxes. After making two payments on the 1981 taxes, she defaulted on the agreement. Mrs. O'Brien took no action with regard to the 1982 tax delinquency. Her home was sold to Appellants in November of 1984, for the 1982 taxes.

Mrs. O'Brien was seen by various mental health professionals from 1983 through 1985. She was involved in an on-going treatment program with Dauphin County Mental Health/Mental Retardation at the time she entered the installment repayment agreement.

The tax claim notice required by Section 308 of the Real Estate Tax Sale Law (Act),[1] for the 1982 taxes was

_____

[1] Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §5860.308.

mailed out to Mrs. O'Brien on July 29, 1983. The relevant notice provisions in Section 308 of the Act during the relevant time period were as follows:

> Each mailed and posted notice shall, ... (3) state that on July first of the year in which such notice is given or if the notice was mailed after July thirty-first, that on the first day of the month (naming it) in which the notice was mailed the one (1) year period of redemption shall commence or has commenced to run, and that if redemption is not made during that period as provided by this act, the property shall be sold pursuant to the provisions of this act and there shall be no further redemption after such sale and (4) state that the owner of any owner-occupied real estate can apply for an extension of the redemption period for up to twelve (12) additional months *under and subject to the provisions of sections 502 and 503 of this act.*[2]

(Emphasis added.)

At the relevant time period in question, Section 502 of the Act, 72 P.S. §5860.502, provided that a county had the option to extend the redemption period for real estate taxes for up to twelve additional months if its unemployment rate was 8% or greater the preceding year. Section 503 of the Act, 72 P.S. §5860.503, contained various criteria which the county commissioners shall employ when a taxpayer submits an application for an extension pursuant to Section 502.

The 1983 amendment to Section 308 which added subsection (a)(4) went into effect the day before the Bureau mailed out the tax claim notice to Mrs. O'Brien. The notice which the Bureau sent Mrs. O'Brien on July

---

² Pursuant to an amendment to the Act effective November 6, 1985, Sections 308(a)(4), 502 and 503, as reenacted or amended, expired on January 1, 1988.

29, 1983, contained all information required by Section 308, except for a statement pursuant to former Section 308(a)(4),[3] that the taxpayer could apply for an additional extension period of up to twelve months. Since the unemployment level in Dauphin County did not equal or exceed 8% in 1982, the county commissioners could not have enacted legislation extending the redemption period pursuant to Section 308(a)(4). Even if Dauphin County's unemployment rate had been 8% or greater in 1982, the July 29, 1983, notice was sent to Mrs. O'Brien only one day after Section 308(a)(4) was enacted. It would have been impossible to expect the commissioners to enact legislation extending the redemption period in one day.

Mrs. O'Brien refused to give up possession of her home after it was sold to Appellants at the tax sale in 1984. Appellants subsequently filed an action to quiet title in the trial court. Mrs. O'Brien then filed a complaint in equity naming the Bureau as an additional defendant. After a non-jury trial, the trial court held that the tax sale should be set aside because the July 29, 1983, notice did not include the statement that the taxpayer could apply for an extension of the redemption period as provided for in Section 308(a)(4). Both Mrs. O'Brien and the Bureau filed post-trial motions[4] which were denied.

On appeal, Appellants contend that the trial court erred in holding that the Bureau was required to in-

---

[3] Hereinafter, we will refer to former Section 308(a)(4) simply as Section 308(a)(4).

[4] Mrs. O'Brien's post-trial motions attacked the portion of the trial court's order of November 3, 1986, which conditioned the setting aside of the tax sale upon payment to the Raynes, within sixty days, of $2,970.13. The Appellants' post-trial motions were directed to the issue of whether the information in Section 308(a)(4) was required to be included in Mrs. O'Brien's tax claim notice.

clude the language of Section 308(a)(4) in Mrs. O'Brien's tax claim notice. In support of this contention, Appellants maintain that it is not necessary to provide a taxpayer with notice that she may apply for an extension of the redemption period where such an extension is not available. We agree.

Although Section 308(a) states that all tax claim notices "shall" contain the information as set forth therein, subsection 4 is to be read in conjunction with Sections 502 and 503. Thus, if a county had enacted legislation extending the redemption period, the taxpayer must be advised that they can apply for such an extension. However, it makes no sense to require a tax claim bureau to notify a taxpayer that they may apply for an extension of the redemption period in counties which have not enacted legislation permitting such an extension. Requiring this type of notice would not only be fruitless but misleading as well. Pursuant to the rules of statutory construction, we may not presume the Legislature intended such an unreasonable result. Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1922(1).

It is true that the Act's notice provisions require strict compliance. *Grace Building Company v. Chester County Land Corp.*, 19 Pa. Commonwealth Ct. 269, 339 A.2d 161 (1975). However, to require the Bureau to have provided Mrs. O'Brien with notice that she could apply for an extension of the redemption period, when the county had no such extension program, clearly ignores the purpose of the requirement which is to notify taxpayers of rights which they may exercise to protect their interest in property subject to tax claims. *See, Tax Claim Bureau of Lehigh County 1981 Upset Sale Properties*, 96 Pa. Commonwealth Ct. 452, 507 A.2d 1294 (1986), where we held that to require strict compliance with the Act's notice provisions where the prop-

erty owner had actual knowledge of a tax sale would be to exalt form over substance, and to ignore the purpose of the requirements.

We hold that the tax sale to Appellants should not be set aside because the Bureau failed to include a Section 308(a)(4) notice on the notice of tax claim. However, Mrs. O'Brien raised two additional issues below in support of her contention that the tax sale was invalid. Specifically, she argued that she was mentally incompetent at the time she entered into the installment agreement, as well as during the period of time leading up to the 1984 tax sale,[5] and that the price Appellants paid for the property was far less than the property's fair market value. Having ruled that the tax sale was invalid on account of the Bureau's failure to include the provisions of Section 308(a)(4) in the tax claim notice, the trial court noted it was not then necessary to address these other two issues. The order of the trial court, as it applies to the Appellants' post-trial motions, is reversed and the matter is remanded for consideration of these two issues which were not addressed.[6]

## ORDER

AND NOW, this 1st day of July, 1988, the order of the Dauphin County Court of Common Pleas at No. 710 S 1985, dated February 11, 1987, as it applies to the post-trial motions filed by Appellants, is reversed. The matter is remanded to the trial court for proceedings consistent with this opinion.

Jurisdiction relinquished.

---

[5] In *Glyder Realty Corp. Appeal*, 75 Pa. Commonwealth Ct. 108, 461 A.2d 1329 (1983), we set aside a tax sale, holding that notice of a tax sale given to an incompetent property owner did not satisfy due process requirements.

[6] The issue of Mrs. O'Brien's competency is especially relevant in light of the Bureau's failure to personally serve her with notice of the tax sale.